UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUN 3 0 2005
AT FRANKFORT
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-CV-522-KKC

FOISTER ASHER, ET AL.,                                   PLAINTIFFS,

v                                    **OPINION & ORDER**

MINNESOTA MINING AND MANUFACTURING                       DEFENDANTS
COMPANY, ET AL.

\* \* \* \* \* \* \* \*

This matter is before the Court on various motions including the Plaintiffs' Motion to Remand this action to Leslie Circuit Court (Rec. No. 13) and the Defendant American Optical Corporation's Motion to Sever (Rec. No. 6).

## I. FACTS.

### A. State Court Action.

This action is one of many product liability actions that have been filed in Kentucky state courts in which current and former coal mine employees assert that certain dust respirators and masks failed to protect them from harmful particles causing them to develop a lung disease known as Coal Workers' Pneumoconiosis ("black lung"). In the other actions before this Court, there has been no dispute that all plaintiffs were Kentucky citizens. Here, however, at least four of the Plaintiffs are Tennessee citizens. The remainder are Kentucky citizens. (Rec. No. 1, Notice of Removal, Ex. A, Complaint, Ex. 1).

In each state court action, the plaintiffs have named as defendants certain companies that they allege manufactured the respirators and/or masks. Here, the manufacturers named by the Plaintiffs

are Minnesota Mining & Manufacturing Corporation ("3M"); American Optical Corporation ("American Optical"); Mine Safety Appliances Company ("Mine Safety"); FLEXO Products, Inc. ("Flexo"); and Moldex-Metric, Inc. ("Moldex"). (Rec. No. 1, Notice of Removal, Ex. A, Complaint, ¶ 5). As with all the other actions, there is no dispute that the manufacturers are foreign corporations with their principal places of business outside of Kentucky. Thus, for purposes of diversity jurisdiction, the manufacturers are not Kentucky citizens.

In each action, Plaintiffs also named as defendants certain companies that they allege sold the respirators and/or masks to the Plaintiffs' coal mine employers. Here, the retailers named by the Plaintiffs are Mine Service Company, Inc. ("Mine Service") and Kentucky Mine Supply Company. (Rec. No. 1, Notice of Removal, Complaint, Ex., ¶¶ 45, 56). As with the other actions, there is no dispute that the named retailers are Kentucky citizens.

**B.   Removal and Motion to Remand.**

Each of these actions has come before this Court on the defendants' notice of removal. (Rec. No. 1, Notice of Removal). This Court has original jurisdiction of all civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332 (a)(1). Diversity jurisdiction requires complete diversity – the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Here, the majority of the Plaintiffs are Kentucky citizens and the retailer defendants are Kentucky citizens. As with the prior actions, however, the removing defendants argue that this Court has subject matter jurisdiction over these actions because the Kentucky retailers are fraudulently joined.

In this action, American Optical also argues for the first time that this Court has subject matter jurisdiction over at least portions of this action because the Plaintiffs' claims are improperly

joined under Rule 20(a) of the Federal Rules of Civil Procedure which governs permissive joinder of plaintiffs' claims. Simultaneously with its Notice of Removal, American Optical filed a Motion to Sever Plaintiffs' Claims (Rec. No. 6) partly on the basis that Plaintiffs improperly joined their claims in order to destroy diversity jurisdiction.[1]

As in all the other actions, the Plaintiffs filed a Motion to Remand (Rec. No. 13) the matter to Leslie Circuit Court arguing that the Kentucky distributors are not fraudulently joined. In this action, in their Motion to Remand, Plaintiffs also argue that their claims are not improperly joined. Pursuant to an Agreed Order, Plaintiffs were granted an extension of time to respond to American Optical's Motion to Sever. (Rec. No. 9, Agreed Order). Plaintiffs have not filed a response to the Motion to Sever. On the date the response was due, the Plaintiffs moved the Court to hold American Optical's Motion to Sever in Abeyance (Rec. No. 12) "until the threshold jurisdictional issues are resolved." Plaintiffs argue that the Court must have jurisdiction before it can rule on whether the Plaintiffs were properly joined.

## II. ANALYSIS.

American Optical's argument that the Court has subject matter jurisdiction over this particular action is two-fold. First, as in the prior actions, American Optical argues that the Kentucky retailers were fraudulently joined. Second, for the first time, American Optical argues that the Plaintiffs' claims were fraudulently *mis*joined into one action and that the claims should be severed into individual actions with the Court retaining jurisdiction over any severed claims that meets the requirements for diversity jurisdiction.

---

[1] Moldex has moved to join in American Optical's Motion to Sever (Rec. No. 8). Moldex's motion will be GRANTED but, for simplicity, the movant on the severance motion will be referred to as American Optical in this Opinion.

3

### A. Fraudulent Joinder of Kentucky Defendants.

As to the fraudulent joinder of the Kentucky retailers, American Optical first argues that the these defendants "cannot be liable under the Kentucky Middleman Statute." (Rec. No. 1, Notice of Removal at 4). The Court addressed this issue in the prior actions. For reasons detailed in the joint Memorandum Opinion (the "Joint Memorandum Opinion") entered in those actions and attached as Exhibit 1, the Court found that American Optical had not met its very high burden on fraudulent joinder of showing that there is not even "arguably a reasonable basis for predicting that state law might impose liability" on the Kentucky retailers under the Kentucky Middleman Statute. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 948-949 (6th Cir. 1994).

After reviewing the allegations made in the Complaint in this action and the Motion to Remand and response thereto, the Court has determined that its analysis in the Joint Memorandum Opinion of the potential liability of the Kentucky retailers under the Middleman Statute is equally applicable to this case. Thus, for the reasons detailed in the Joint Memorandum Opinion, American Optical has not proved that, under the Kentucky Middleman Statute, there is no reasonable basis for predicting that Kentucky state law might impose liability on the Kentucky retailers.

While it did not make the argument in its Notice of Removal, in response to the Motion to Remand, American Optical makes another argument that it has not made in the prior actions. American Optical argues that the retailer defendants are fraudulently joined because "plaintiffs have never alleged any specific facts connecting any retailer to any particular plaintiff." (Rec. No. 20, Response to Motion to Remand at 4).

American Optical presents an affidavit by Mine Service's president stating that Mine Service has never sold products manufactured by American Optical. (Rec. No. 1, Notice of Removal, Ex.

4

E., Cornett Aff., ¶ 6). American Optical does not dispute, however, that Mine Service sold products manufactured by the other named manufacturers. Nor does American Optical dispute that Kentucky Mine Supply – the other Kentucky retailer defendant – sold products manufactured by American Optical. American Optical, thus, does not present evidence that neither of the Kentucky retailer defendants sold any of the products at issue to the Plaintiffs' employers. Instead, American Optical apparently argues that the Plaintiffs' Complaint is fatally deficient because it does not state from which of the two defendant retailers each of the Plaintiffs' employers purchased the allegedly defective products.

A Kentucky state court would not, however, dismiss the Plaintiffs' Complaint against the retailer defendants on this basis. Like the Federal Rules of Civil Procedure, Rule 8.01 of the Kentucky Rules of Civil Procedure ("CR") provide for notice pleading. As American Optical recognizes, with an exhibit attached to the state court Complaint, the Plaintiffs specifically identify the products that each plaintiff claims to have used. (Rec. No. 1, Notice of Removal, Ex. A, Complaint, Ex. 1; Rec. No. 7, Mem. Supp. Severance at 2). Presumably the retailers know better than the Plaintiffs which manufacturers' products they sold. The Complaint gives the Kentucky retailer defendants adequate notice under CR 8.01 of the nature of the claim against them.

It is true that the Complaint fails to connect each Plaintiff with a retailer defendant. The Defendants' proper recourse under Kentucky state law, however, would be to request a more definite statement under CR12.05. The Complaint would not be dismissed because of the alleged deficiencies. *See Rucker v. Rainwater*, 449 S.W.2d 753, 754-55 (Ky. 1970). Thus, this Court cannot find that the Kentucky retailer defendants were fraudulently joined on the basis that the Complaint is deficient under CR 8.01.

Nevertheless, as will be further explained below, in order for this Court to determine whether it may exercise jurisdiction over any of the Plaintiffs' claims under the fraudulent misjoinder doctrine, each Plaintiff will be required to identify the specific defendants against which the Plaintiff is asserting a claim.

### B. Misjoinder of Plaintiffs' Claims.

American Optical also makes another argument that has not been asserted in prior actions. It argues that "Plaintiffs also are attempting to destroy diversity by misjoining their claims." (Rec. No. 7. Mem. Supp. Severance at 8). American Optical argues that the Tennessee Plaintiffs have misjoined their claims with the Kentucky Plaintiffs in order to "avoid removal of their individual claims." (Rec. No. 7, Mem. Supp. Severance at 8). Additionally, American Optical argues that the Plaintiffs who can state a claim against a Kentucky retailer defendant are misjoined with Plaintiffs who have no claim against a Kentucky retailer defendant, also in an effort to defeat diversity. (Rec. No. 7, Mem. Supporting Severance at 8).

### 1) The Fraudulent Misjoinder Doctrine.

"Fraudulent joinder" of defendants addresses the viability of claims against a defendant. "Fraudulent *mis*joinder," on the other hand, addresses the joinder of the claims rather than their viability. With fraudulent misjoinder, the charge is that the joined claims are unrelated and have been improperly joined in one action to destroy diversity. *Lyons v. Lutheran Hospital of Ind.*, 2004 WL 2272203, at * 4 (S.D. Ind. 2004)(unpublished). The Sixth Circuit has not adopted or even addressed the fraudulent misjoinder doctrine. The genesis of the doctrine is the Eleventh Circuit's opinion in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds in, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

In *Tapscott,* the plaintiffs, some of which were Alabama citizens, filed suit in Alabama state court against four defendants in the automotive industry one of which was an Alabama citizen. *Id.* at 1355. The plaintiffs asserted claims of fraud and conspiracy arising from the sale of automotive service contracts. *Id.* The plaintiffs filed an amended complaint naming additional plaintiffs and defendants. Two of the additional plaintiffs were Alabama citizens who asserted a claim against Lowe's Home Centers, a North Carolina corporation. *Id.* No other plaintiffs asserted a claim against Lowe's. *Id.* at 1355 n.1.

While the initial plaintiffs' claims had alleged violations arising from the sale of automotive service contracts in connection with the sale of automobiles, the claim against Lowe's alleged violations arising from the sale of extended service contracts in connection with the sale of retail products. *Id.* Lowe's removed the action to federal court and filed a motion to sever the claim against it from the claims against the other defendants. *Id.* at 1355. Diversity jurisdiction would have existed over a separate claim by the two Alabama plaintiffs against Lowe's of North Carolina. However, because the claim was joined with the claims against Alabama defendants, diversity jurisdiction over the Lowe's claim did not exist. The district court held that there was an "improper and fraudulent joinder, bordering on a sham." *Id.* at 1360. It then disregarded the citizenship of the improperly joined parties, granted the motion to sever and remanded the action to state court as to all defendants except Lowe's. *Id.* at 1355.

The Eleventh Circuit Court of Appeals affirmed the district court stating that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* at 1360. The court noted that the "automobile" class of defendants had no real connection with the controversy involving Lowe's. *Id.* The Court further

7

explained, "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that [plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

Since then, courts have recognized that "the governing legal standards regarding the fraudulent misjoinder doctrine are far from clear." *Walton v. Tower Loan of Miss.*, 338 F.Supp.2d 691, 695 (N.D. Miss. 2004). Some courts have declined to enter into the confusion and complexity of fraudulent misjoinder and have concluded that a defendant should "resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court." *Obsborn v. Metropolitan Life Insurance Co.*, 341 F.Supp.2d 1123, 1127 (E.D. Cal. 2004). *See also Walton*, 338 F.Supp.2d at 696 (stating that state courts, which are not limited by diversity jurisdiction, are in the best position to determine if plaintiffs have joined together for abusive or legitimate purposes).

### 2) The Standard.

In analyzing the fraudulent misjoinder doctrine, some courts have suggested a federal court "would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were 'egregious'" as the Court found in *Tapscott*. *Walton*, 338 F.Supp.2d at 695; *Sweeney v. Sherwin Williams*, 304 F.Supp.2d 868, 872 (S.D. Miss. 2004). *See also, Bright v. No Cuts Inc.*, 2003 WL 22434232, at *4 (E.D. La. 2003)(unpublished)(collecting cases holding that mere misjoinder is not fraudulent misjoinder); *Johnson v. Glaxo Smith Kline*, 214 F.R.D. 416, 421 (S.D. Miss. 2002)("Since the Court has found that. . . the joinder of the plaintiffs' claims against the [defendants], even if not proper, does not rise to the level of fraudulent joinder, the Court shall let the state court decide the issues of improper joinder and severance.").

The "egregiousness" standard has not, however, been universally accepted in the federal court. In *In re Rezulin Prods. Liab. Litig.*, 168 F.Supp.2d 136 (S.D. N.Y. 2001), the Court stated:

> Arguably a plaintiffs' right to choose among defendants and claims– the principal reason for imposing a strict standard of fraudulent joinder to effect removal– is not compromised where claims of co-plaintiffs are severed or dismissed. This is not to say the cost and efficiency benefits to joined plaintiffs are immaterial; they simply do not carry the same weight when balanced against the defendant's right to removal. While aware that several courts have applied *Tapscott's* egregiousness standard when considering misjoinder of plaintiffs in the context of remand petitions, this Court respectfully takes another path.

*Id.* at 147-48.

Likewise, in *Grennell v. Western Southern Life Ins. Co.*, 298 F.Supp.2d 390 (S.D. W.Va.. 2004), the court explained why a less strict standard should be applied to determine whether plaintiffs were fraudulently *mis*joined than in determining whether a nondiverse defendant had been fraudulently joined:

> [W]hen a court holds that a defendant has been fraudulently joined, its only course of action is to dismiss the defendant from the case, thus potentially extinguishing (and certainly complicating) a plaintiff's opportunity to recover from the now-absent party. Upon a finding that nondiverse plaintiffs have been fraudulently joined, however, the court may sever the claims of the nondiverse plaintiffs and remand them to state court. Thus, a plaintiff's ability to recover when a court denies a motion to remand based on fraudulent joinder of plaintiffs is much less at risk than when the court takes the same action because of fraudulent joinder of defendants.

*Id.* at 396-97.

### 3) State or Federal Joinder Rules.

Yet another unclear issue under the fraudulent misjoinder analysis is whether the state or federal joinder rules should determine whether the plaintiffs' claims are properly joined. While the *Tapscott* court applied Fed. R. Civ. P. 20 to determine if the parties to that action were properly joined, it did so without addressing whether the federal rules or the corresponding state rule should

9

apply. *Tapscott*, 77 F.3d at 1360. It appears that the majority of courts that have adopted the fraudulent misjoinder doctrine have determined that the issue of whether claims have been misjoined should be evaluated under state procedural law rather than federal law. *Lyons*, 2004 WL 2272203, at * 5 (citing *Bridgestone/Firestone, Inc. v. Ford Motor Co.*, 260 F.Supp.2d 722, 728 (S.D. Ind. 2003); *Conk v. Richards & O'Neil, L.L.P*, 77 F.Supp.2d 956, 970-71 (S.D. Ind. 1999); *Sweeney v. Sherwin Williams, Co.*, 304 F.Supp.2d 868, 873 (S.D. Miss. 2004); *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315, 1321 & n.6 (S.D. Miss. 2003)); *Osborn*, 341 F.Supp.2d at 1128 ("[M]ost courts looking at this issue have applied the state rule. This seems the better choice since the question is whether the parties were misjoined in state court.").

In *Conk*, the court determined that state procedural rules govern fraudulent misjoinder, stating:

> After all when [the plaintiff] filed his complaint in the [state] court, he was not required to comply with Federal Rules of Civil Procedure in terms of joinder of parties or claims. . . [T]he court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against Leonard were properly joined with his claims against the other defendants?"

*Conk*, 77 F.Supp.2d. at 971.

Likewise in *Jamison*, the court stated:

> While acknowledging the clear statement of Rule 81(c), applying the federal rules to cases removed from state court, this Court is also aware of Rule 82's admonition that "these rules shall not be construed to extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82 . . . [A] district court may run afoul of Rule 82 when it uses a federal rule to sever the claims in a removed case, if those claims were *properly joined under state law when the suit was originally filed*. Such a reshaping of the action by the district court creates jurisdiction where it did not previously exist . . . In the instant case, the defendant has removed an action that, as pleaded, does not exhibit complete diversity. If the defendant has removed the action because the resident doctor has been fraudulently misjoined, the misjoinder of claims must have

existed under Mississippi's Rule 20 when the action was brought. It makes little sense to say that the resident doctor's joinder became fraudulent *only after removal and only under the federal rule*. . . [S]everance of claims only when those claims were improperly joined under state law at the action's inception . . . shares the same conceptual rationale underlying the doctrine of fraudulent joinder. In both instances, the court, in examining, its own jurisdiction, attempts to identify an infirmity in the plaintiff's complaint, *under the law of the state in which it was originally brought.* For fraudulent joinder, this infirmity is the failure to state a viable cause of action against a non-diverse defendant; for fraudulent misjoinder, the infirmity is the failure to comply with state rules of joinder. Stated differently, under both . . . the district court simply looks to what the state court would do.

*Jamison*, 251 F.Supp.2d at 1321 n.6. *See also Grennell*, 297 F.Supp.2d at 397 n.9 (state procedural law should probably govern since issue on fraudulent joinder is whether a plaintiff's claim could prevail as it was filed in the state court from which it was removed).

### 4) Misjoinder of the Coal Miner Plaintiffs's Claims in this Action.

The Court agrees with the Eleventh Circuit's holding in *Tapscott* that, just as this Court may find diversity jurisdiction exists where a plaintiff has no possible cause of action against a nondiverse defendant, this Court may also find diversity jurisdiction where diversity is destroyed only through misjoinder of parties. In their Motion to Hold American Optical's Motion to Sever in abeyance, the Plaintiffs argue that the "Court must have jurisdiction over the case before it can render a ruling on the permissive joinder of the plaintiffs." (Rec. No. 12, Mot. to Hold in Abeyance at 2).

Pursuant to the fraudulent misjoinder doctrine, however, the Court *must* first determine whether the Plaintiffs' claims were misjoined before it can determine whether it has subject matter jurisdiction. If the Plaintiffs' claims were misjoined, this Court may exercise jurisdiction over any individual action which does not include a claim against a Kentucky retailer and may remand the remaining actions. Accordingly, pursuant to the fraudulent misjoinder doctrine, which this Court now adopts, the Plaintiffs' Motion to Hold American Optical's Motion to Sever in Abeyance (Rec.

No. 12) until the Court rules on the motion to remand will be **DENIED**.

The Court agrees with those courts that have applied the same rationale to fraudulent *mis*joinder as to fraudulent joinder and have held that something more than "mere misjoinder" is required before this Court may take the extraordinary step of exercising jurisdiction over an action where jurisdiction is lacking on the face of the complaint. The fraudulent joinder doctrine allows a federal court to exercise jurisdiction over an action even where jurisdiction is seemingly absent when it is obvious on a limited analysis that the Plaintiff has no real claim against a nondiverse defendant. There, the proper inquiry is whether there is even arguably a reasonable basis for predicting that state law might impose liability on the nondiverse defendants.

The fraudulent *mis*joinder doctrine likewise allows this Court to take the extraordinary step of exercising jurisdiction over an action where jurisdiction is lacking on the face of the complaint. Thus, it is logical, and consistent with this Court's limited jurisdiction, that the proper inquiry before taking this step is whether there is even arguably a reasonable basis for predicting that the state court would find that the claims were properly joined.[2]

Here, the Court need not decide whether federal or state joinder rules apply where there is an allegation of misjoinder because the Kentucky and federal rules regarding misjoinder are, in all significant respects, identical.[3] Both rules provide that plaintiffs may be joined if they (1) "assert

---

[2] To the extent that any courts have held that fraudulent misjoinder requires a finding of "bad faith" attempt to defeat diversity on the part of the plaintiffs, the Court disagrees. As with the fraudulent joinder analysis, the Court does not believe that the plaintiff's actual motive is relevant to the analysis of whether the plaintiffs' claims are misjoined under state or federal rules. *See, J. Lewis Cooper Co. v. Diageo North America, Inc.*, 370 F.Supp.2d 613, 617 (E.D. Mich. 2005) (plaintiffs' motive irrelevant to fraudulent joinder analysis).

[3] The Court notes, however, that since the focus of the fraudulent misjoinder analysis is on whether the claims were properly joined in the state court complaint, it flows that the procedural rules of the state court in which the action was filed should govern the issue of proper joinder. If the plaintiffs' claims were properly joined under

any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "if any question of law or fact common to all these persons will arise in the action." CR 20.01; Fed. R. Civ. P. 20(a). "Both of these requirements must be satisfied in order to sustain party joinder. . . ." 7 Wright, Miller & Kane, Fed. Prac. & Proc. § 1653 (2001). The transaction and common question requirements are not, however, "rigid tests." *Id.* "They are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." *Id.*

The exhibit attached to the Plaintiffs' state court complaint reveals that the 81 plaintiffs allege that they used products manufactured by various combinations of the named manufacturers. For example, the first- and fourth-named plaintiffs used only the products of Mine Safety; the second- and third-named plaintiffs used products manufactured by 3M, American Optical and Mine Safety. The fifth-named plaintiff used products manufactured by all the named manufacturers except Flexo. Thus, this is not a case where multiple plaintiffs used a single manufactured product.

Whether any manufacturer is liable will likely involve such facts as the particular manufacturer's product; the particular manufacturers' knowledge; the particular manufacturers' warnings; and the particular manufacturers' marketing methods. Moreover, causation of each Plaintiffs' damages will likely involve such facts as which combination of products each Plaintiff used, the length of time each product was used, the manner in which it was used and the Plaintiff's

---

state rules, then there was no basis for removing the action to federal court in the first place because there was no diversity jurisdiction. If joinder was proper in the state court, then this Court then has no jurisdictional basis to analyze the case under the federal rules to determine if the claims should be severed.

13

medical history. These facts will differ with each Plaintiff.

The only common factual allegation in each Plaintiffs' claim is the allegation that each used the same kind of product or products in the same kind of work. This is not a sufficient basis for a Kentucky state court to find that the Plaintiffs' claims arise out of the same transaction or series of transactions. Accordingly, the Court finds that the Plaintiffs' claims are clearly misjoined under Kentucky state law and that there is not arguably a reasonable basis for finding that the Plaintiffs' claims were properly joined.

Typically, the proper remedy for misjoinder of plaintiffs would be for the court to exercise jurisdiction over the action, sever the claims and remand the claims of the nondiverse plaintiffs. *Grennell*, 298 F.Supp.2d at 399-400. Here, however, it is not clear that this Court has jurisdiction over any of the Plaintiffs' claims. This is because, as discussed above, the Complaint does not specifically state whether each Plaintiff asserts a claim against a Kentucky retailer defendant and, if so, which Kentucky retailer defendant. Thus, even after finding improper joinder, this Court is unable to determine if, after severing the Plaintiffs' claims into individual actions, it would have jurisdiction over any single one of them.

It is clear that this Court would have no removal jurisdiction over any claim by any Plaintiff – whether a Kentucky or Tennessee citizen – against a Kentucky retailer defendant. 28 U.S.C. § 1441(b)(prohibiting removal of diversity action in which any defendant is a citizen of the state in which the action is brought). It is not clear, however, which of these 81 Plaintiffs attempts to assert a viable claim against a Kentucky retailer.

Accordingly, prior to exercising jurisdiction over this action and severing the Plaintiffs' claims, the Court will grant the parties a limited amount of time for discovery more fully described

14

below on the issue of which Kentucky retailer, if any, the individual Plaintiffs assert a claim against. The Court cannot determine if it has jurisdiction over this action until the defendants for each Plaintiff's claim are specifically identified.

If each Plaintiff asserts a viable claim against a Kentucky retailer, this Court has no jurisdiction over this action despite the misjoinder and will remand the action in its entirety. If, however, there are Plaintiffs that do not assert any viable cause of action against a Kentucky retailer, then the Court may exercise jurisdiction over those actions. The Court will then sever each of the Plaintiffs' claims into individual actions and remand only those which state a viable claim against a Kentucky retailer.

Accordingly, the Plaintiffs' Motion to Remand (Record. No. 13) and American Optical's Motion to Sever (Rec. No. 6) will both be **DENIED** as premature. The motions may, however, be reasserted, if appropriate, after the parties have conducted discovery for the purpose of identifying the defendants on each Plaintiff's claim.

### III. CONCLUSION.

Accordingly, it is hereby ORDERED as follows:

(1) American Optical's Motion to Sever is **DENIED** (Rec. No. 6) as premature with leave granted to reassert the motion as described below;

(2) Moldex's Motion to Join American Optical's Motion to Sever (Rec. No. 8) is **GRANTED**;

(3) the Plaintiffs' Motion to hold American Optical's Motion to Sever in Abeyance (Rec. No. 12) is **DENIED**;

(4) the Plaintiffs' Motion to Remand (Rec. No. 13) is **DENIED** as premature with leave

granted to reassert the motion as described below;

(5) American Optical's Motions for Leave to File Surreply and Supplemental Memoranda (Rec. Nos. 22 and 24) are **GRANTED**. The clerk shall file the tendered memoranda in the record of this matter;

(6) The parties are given a limited period of time to conduct discovery solely on the issue of which Plaintiffs received masks from the Kentucky defendants. Discovery is limited in the following manner: within fifteen days of the entry date of this Order, the Plaintiffs and Defendants may serve upon an opposing party up to five requests for production of documents; up to five requests for admissions, and up to five interrogatories. The party receiving the discovery request must respond within fifteen days of the date the request is received.

(7) Within 60 days from the entry date of this Order, American Optical may reassert its Motion to Sever on the basis that this Court may exercise diversity jurisdiction over one or more of the Plaintiffs' claims; and

(8) Within 60 days from the entry date of this Order, the Plaintiffs may reassert their Motion to Remand the entire action or move to remand individual actions.

This the 30th day of June, 2005.



Signed By:
Karen K. Caldwell
United States District Judge

KAREN K. CALDWELL, JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY