UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| FOISTER ASHER, et al., Plaintiffs, | ) | Civil Action No. 6: 04-522-DCR |
| V. | ) | |
| MINNESOTA MINING AND MANUFACTURING CO., et al., Defendants. | ) | **MEMORANDUM OPINION AND ORDER** |

*** *** *** ***

This matter is before the Court for consideration of the Plaintiffs' Motion to Remand [Record No. 31] and the Defendants' Motion to Sever. [Record No. 33] Because the requirements of Rule 20(a) have not been met, the motion to sever will be granted. However, because the Plaintiffs have pleaded sufficient information to establish colorable claims against the non-diverse Defendants, the motion to remand will be granted.

## I. BACKGROUND

The Plaintiffs in this case are former coal miners who allegedly suffer from black lung disease. They claim to have worked in coal mines in Kentucky and used various respirators designed to reduce coal dust from entering their lungs. The respirators were allegedly manufactured by one of the five "manufacturing" defendants in this case (*i.e.*, Minnesota Mining and Manufacturing Company, American Optical, Mine Safety Appliances Company, FLEXO Products, and Moldex-Metric, Inc.). The Plaintiffs claim that the respirators were defective, causing coal dust to enter their lungs. They assert that this defect led to their black lung disease.

The Plaintiffs have also filed suit against the alleged suppliers of the respirators: Mine Service Company, Inc. ("MSC"), Kentucky Mine Supply Company ("KMSC"). These suppliers are non-diverse Defendants from Kentucky.

The Plaintiffs argue that the Court should grant their motion to remand and deny the remaining motions pending in this action, including the Defendants' motion to sever. Specifically, the Plaintiffs assert that the Court lacks subject matter jurisdiction over this action inasmuch as there is not diversity of citizenship because they have valid claims against non-diverse Kentucky Defendants. In contrast, the Defendants argue that the Court has subject matter jurisdiction for two reasons. First, the Defendants argue that the Kentucky suppliers were fraudulently joined. Second, they contend that the Plaintiffs' claims have been fraudulently misjoined into one action because not all of the Plaintiffs' claims share the requisite commonality to be joined under Rule 20(a). Thus, the Defendants argue that the claims should be severed into individual actions with the Court retaining jurisdiction over any severed claims that meet the requirements for diversity jurisdiction.

## II. ANALYSIS

### A. Severance

As this Court has noted in similar cases presenting identical issues for resolution, there are two requirements for establishing joinder of claims pursuant to Rule 20(a): (1) there must be a common question of law or fact, and (2) the case must arise out of the same transaction, occurrence, or series of transactions or occurrences. *James v. Gilmore*, 389 U.S. 572 (1968). The most troubling aspect of joinder in this case is the second requirement, *i.e.*, transactional

relatedness. While this concept is flexible, in determining whether it has been established, the ultimate determination is whether there are enough factual occurrences to ensure that joinder is fair. *Hall v. E. I. Du Pont De Nemours & Co.*, 345 F. Supp. 353, 381 (E.D.N.Y. 1972); *see also Abdullah v. Acands, Inc.*, 30 F.3d 264, 269 n.5 (1st Cir. 1994) (joinder rejected in action by sailors alleging asbestos exposure but not alleging that plaintiffs served on same vessel during same time period, or were exposed by same machinery); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (in action alleging breach of warranty regarding automobiles, fact that plaintiffs alleged similar problems did not mean that the claims were transactionally related). Indeed, "[m]ere factual similarity is not sufficient to compel joinder." *McCormick v. Mays*, 124 F.R.D. 164, 167 (S.D. Ohio 1988).

The Defendants cite this Court's previous Order, in which it noted several cases holding that joinder is improper when different manufacturers and distributors are involved and the only similarity between the plaintiffs' claims is that the plaintiffs were injured by the same generic product. *Adams v. Minnesota Mining and Manufacturing Co*., No. 6: 04-521-DCR (E.D. Ky. June 30, 20045); *citing Rezulin II*, 168 F. Supp. 2d 136; *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001); *Insolia*, 186 F.R.D. 547. The *Graziose* Court dealt with a claim brought by various plaintiffs against numerous distributors and manufacturers of medications that contained phenylpropanolamine, a supposedly harmful substance. In refusing to allow the joinder of the plaintiffs in the same action, the district court noted that:

> [t]he purchases/ingestions of the medications in question clearly did not arise out of the same transaction or a series of transactions. They occurred at different times. The medicines were different. The retailers were different. The manufacturers are different. The questions of law and fact involved in each claim

> is also different. The damages involve different people with different sets of facts. The purchases, the use, the need, the motivation, the knowledge of the parties, the alleged reliance, apparently the exact nature of the injuries or damages, the potential for contributing factors . . . are all questions peculiar to each claim.

*Graziose*, 202 F.R.D. at 640. Similarly, in *Rezulin II*, the court noted that:

> [t]he plaintiffs . . . allege a defect (or defects) the precise contours of which are unknown and which may have caused different results -- not merely different injuries -- in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. . . . [T]hey do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common. Joinder "of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims."

*Rezulin II*, 168 F. Supp. 2d at 146 (citation omitted). As this Court noted previously, the contours of each Plaintiffs' claim will vary depending upon such factors as: the type of mask used and the identity of the manufacturer, the length of use of the mask, the mine in which the mask was used, the physical ailments attributable to the mask, and the identity of the retailer.

The Plaintiffs, however, suggest that this court follow the approach taken by some other courts, and remand the case without making any other determinations. *See Baker v. Minnesota Mining and Manufacturing Co.*, No. 6:03-470-KKC (E.D. Ky. May 26, 2004). However, as this Court has the authority to hear all matters properly before it, it may consider Plaintiffs' motion to sever the claims before ruling on the motion to remand. *See In re: Benjamin Moore and Co.*, 309 F.3d 296 (5th Cir. 2002) (in a case in which not all plaintiffs had claims against non-diverse defendant, appellate court ordered district court to determine, before ruling on motion to remand,

whether plaintiffs' claims were different enough to warrant severance); *Bay Tobacco, LLC v. Bell Quality Tobacco Prod's, LLC*, 261 F. Supp. 2d 483, 490 (E.D. Va. 2003) (after removal to federal court, district court severed diversity-defeating plaintiff as a misjoined plaintiff pursuant to Rules 20 and 21 and thus denied motion to remand).

The Court, therefore, will reaffirm its prior Order, as is consistent with the holdings in *Rezulin II*, *Graziose*, and *Insolia*. A generic claim against various manufacturers is not necessarily sufficient to find that the plaintiffs claims arose out of the same "transactions or occurrences" when the plaintiffs make claims against various retailers and manufacturers. In this case, the manufacturers of the masks were different, the retailers were different, the Plaintiffs allegedly used different masks for varying periods of time and suffered varying degrees of harm, and the safety information conveyed by each company and received by each Plaintiff is likely different. Further, the claims brought against the retailers are entirely different from the claims brought against the manufacturers, involving different legal theories and different types of proof. The assurances provided by the retailers is likely different, as is the amount of information the retailers had about their products. The Court cannot conclude that each Plaintiffs' injury allegedly arose from the same transaction or occurrence as the others. As discussed *supra*, the facts of each Plaintiffs' case will turn on numerous independent variables.

Conversely, the Plaintiffs claim that judicial economy would be harmed by severing any of their claims. However, this Court will again note that "[j]oinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." *Rezulin II*, 168 F. Supp. 2d at 146. The Court must also consider whether

it is fair to the individual Defendants to defend an action from a number of different Plaintiffs, who used masks by different manufacturers and purchased the masks from different retailers. In the *Insolia* case, numerous cigarette users sued various tobacco companies, claiming they had conspired to hide the dangers of tobacco smoke. In granting the defendants' motion to sever the claims, the court noted that:

> this case involves five tobacco companies who have manufactured hundreds of brands of cigarettes. It is unlikely that a jury could keep track of which plaintiff smoked which brand and for how long while also retaining a coherent grasp of the minutiae associated with addiction, medical causation and legal causation. But this is not simply a matter of jury confusion. Judicial resources are wasted, not conserved, when a jury is subjected to a welter of evidence relevant to some parties but not others. Confusion can lead to prejudice when there are inadequate assurances that evidence will be weighed against the appropriate party and in the proper context.

*Insolia*, 186 F.R.D. at 551. In this case, jury confusion would likely result in co-mingling Plaintiffs who allege claims against various retailer Defendants in the same action with Plaintiffs who have no claim against the retailers. Such confusion will waste judicial resources and prejudice the Defendants.

Further, if severance is not granted, when this case is remanded, it remains unclear whether the state court will order separate trials pursuant to Rule 20.02 of the Kentucky Rules of Civil Procedure. The Court must bear in mind a foreign defendant's right to remove a case, properly subject to federal jurisdiction, to avoid local bias. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158-59 (6th Cir. 1993). Weighing all of these factors, the Court believes that a limited severance is appropriate.

The only common factual allegation in the Plaintiffs' claims is the allegation that each used the same kind of product or products in the same kind of work. This is not a sufficient basis for a Kentucky state court to find that the Plaintiffs' claims arise out of the same transaction or series of transactions. Accordingly, the Court finds that the Plaintiffs' claims are misjoined and that there is not arguably a reasonable basis for finding that the Plaintiffs' claims were properly joined. While further severance may be necessary, based both upon the manufacturers' and the retailers' relationships with the individual Plaintiffs, such additional severance can be taken up by the state court at a later date.[1] At this point, however, it is only necessary for this Court to further determine whether the each of the Plaintiffs have claims against the Kentucky Defendants, in order to resolve the remand issue with respect to each Plaintiff that is properly before the Court.

**B. Motion to Remand & Fraudulent Joinder**

The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989). In *Coyne v. The Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999), the Sixth Circuit explained the relevant considerations in analyzing a claim of fraudulent joinder, noting that:

> the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in

---

[1] Any future severance could be based upon either Rule 20(a) or Rule 20(b).

> the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

It should be further noted that:

> [t]his court has a responsibility to accept jurisdiction in all proper cases. [However,] [i]t has a greater obligation to protect the jurisdiction of the State court, both by reason of comity to that court and fairness to litigants who have chosen it as a forum. Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.

*Walsh v. Am. Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967). Thus, this Court must remand the case if there is any doubt regarding this Court's ability to retain jurisdiction.

The Defendants, however, assert that the Kentucky Middleman Statute, K.R.S. § 411.340, forecloses any liability against the Kentucky Defendants. That statute provides that:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

K.R.S. § 411.340. The Defendants claim that the respirators and dust masks were sold in their original condition, thus precluding liability for the Kentucky Defendants. The Defendants also point out that the Plaintiffs have not established how the retailers should have known of the alleged defects in the masks. The Defendants argue that retailer has no duty to "test or seek out scientific information regarding the products" they sell. Therefore, they claim that they cannot be liable under the "should have known" exception to the middleman statute. Furthermore, the

retail Defendants' lack of liability due to the middleman statute also means that those Defendants had no legal duty to Plaintiffs, and are therefore improperly in this case.

In addition to the Court's previous decision in *Adams*, the undersigned has reviewed opinions from two district judges who have concluded that the Kentucky Middleman Statute does not render the distributors and retailers of the allegedly defective respirators "fraudulent" parties to the plaintiffs' suits. *Baker v. Minnesota Mining and Manufacturing Co.*, No. 6: 03-470-KKC (E.D. Ky. May 26, 2004); *Adams v. Minnesota Mining and Manufacturing Co.*, No. 4:03CV-182-M (W.D. Ky. March 30, 2004). Judge Caldwell's opinion, in fact, involved one of the same "fraudulent" parties (*i.e.*, MSC). In that opinion, Judge Caldwell noted that

> [t]he only evidence produced by American Optical on this issue is an affidavit from Mine Service's president who states that, contrary to the allegations in the Complaints, Mine Service "had no reason to know at the time of the sale of each of the masks/respirator products of any alleged defects" in the products. This Court cannot determine that a distributor had no reason to know about a product's defects based solely on a conclusory statement made by the defendant distributor to that effect.

[6: 03-470-KKC, Record No. 63, p. 7]

Thus, consistent with *Baker* and *Adams*, the undersigned concludes that there is a colorable basis for predicting that those Plaintiffs whose masks came from the Kentucky Defendants have asserted colorable claims against the Kentucky retailers. This conclusion is further bolstered by the fact that all doubts are "resolved in favor of remand." *Coyne*, 183 F.3d at 493. *Parker v. Henry A. Petter Supply Co.*, 165 S.W.3d 474 (2005), also bolsters this conclusion.

In *Parker*, the Kentucky Court of Appeals held that while the Middleman statute was applicable insofar as the plaintiff had identified at least some of the manufacturers, summary judgment for the retailers was inappropriate. The plaintiff produced expert testimony of a doctor who would have testified that the dangers of asbestos were known of in scientific and medical journals at least 20 years prior to plaintiff's exposure, and that by the time of plaintiff's exposure, that knowledge was widespread within the industry. *Id.* at 478. The Court of Appeals concluded that summary judgment was premature; that plaintiff had created an issue of fact sufficient to defeat summary judgment and allow discovery to continue.[2]

While this Court is not bound by decisions of the lower state courts, it should follow decisions of intermediate state appellate courts unless persuasive evidence indicates that the highest state court would decide the issue differently. *Hicks v. Feiock*, 485 U.S. 624, 630 (1988), *quoting West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237-238 (1940). As neither the Defendants nor this Court can identify any authority which suggests the Kentucky Supreme Court would overrule the decision in *Parker*, the Court will be guided by that decision.

## III. CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1) Plaintiffs' Motion to Sever [Record No. 33] is **GRANTED**.

(2) The Plaintiffs' Motion to Remand [Record No. 31] is **GRANTED**.

---

[2] While the summary judgment standard in Kentucky is different than the standard that would be applied under the Federal Rules of Civil Procedure, the differences do not affect the outcome of this determination.

(3) The Plaintiffs are **SEVERED** from each other and all claims are **REMANDED** to the Leslie Circuit Court as separate actions. The filing fees for these separate actions will be governed by state law at the time of re-docketing by the state court.

This 27th day of October, 2005.




**Signed By:**
***Danny C. Reeves*** DCR
**United States District Judge**